# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: |
| | ) | |
| DAVID RAUSCH, in his capacity as | ) | Judge _____ |
| Director of the Tennessee Bureau of | ) | |
| Investigation; | ) | |
| | ) | Magistrate Judge _____ |
| And, | ) | |
| | ) | |
| MAURY COUNTY, TENNESSEE; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Plaintiff John Doe is a resident of Maury County, Tennessee who has been retroactively required to comply with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 for the rest of his life. *See* Tenn. Code Ann. § 40-39-201 *et seq.* (2024) (the "SORVTA").

2.      Plaintiff pleaded guilty to numerous offenses from 1991 to 1999 in California. The final offense in 1999 resulted in Plaintiff being sentenced prison.

3.      After completing his sentence, Plaintiff relocated to Tennessee to be closer to family. Since that time, Plaintiff has been retroactively subjected to the SORVTA and must meet increasingly onerous registration, restriction, and monitoring requirements, which severely limit

his ability to connect with his family; find and keep housing and employment; engage in speech and association; travel; and be free from public harassment and stigma.

4.  Under the SORVTA, Plaintiff faces the ongoing threat of arrest and criminal prosecution, incarceration, and fines if he does not rigidly conform his behavior to the requirements of the registry statute.

5.  The scope of Tennessee's sex offender registry restrictions and the content of its reporting requirements since Plaintiff's offense have so fundamentally changed and expanded that it has become punitive in its effect as applied to Plaintiff.

6.  While the U.S. Supreme Court found that sex offender registration was analogous to a visit to an official archive in *Smith v. Doe*, 438 U.S. 84 (2003), technology has dramatically changed the form, function, and reach of registry information since that time.

7.  The legislative reasoning behind SORVTA, and similar registry schemes, of combatting the "frightening and high" recidivism posed by sex offenders, is based upon a false premise that recidivism rates of sex offenders is high when in reality sex offenders are less likely to recidivate and "offense-based public registration has, at best, no impact on recidivism." *Does v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016); *but see Smith v. Doe*, 539 U.S. 84, 103 (2003); and *Doe v. Bredesen*, 507 F.3d 998, 1004 (6th Cir. 2007).

8.  As such, the retroactive application of the geographic restrictions imposed under Tennessee's sex offender registry statute violate the constitutional prohibition against *ex post facto* laws.

9.  Due to the expansion of SORVTA restrictions, reportable information, and public access to that information, the demarcation of Sixth Circuit precedent has shifted since the *Cutshall* and *Bredesen* decisions. *Compare Cutshall v. Sundquist*, 193 F.3d 466, 474 (6th Cir. 1999), and

*Doe v. Bredesen*, 507 F.3d 998, 1001 (6th Cir. 2007), *with Does v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016) and *Does #1-9 v. Lee*, 659 F. Supp. 3d 865 (M.D. Tenn. 2023), aff'd in part, rev'd in part and remanded sub nom. *Doe v. Lee*, 102 F.4th 330 (6th Cir. 2024).

10.     Plaintiff seeks injunctive relief against all Defendants barring application of the geographic restrictions imposed by SORVTA to him.

## PARTIES

11.     Plaintiff is an adult resident of Maury County, Tennessee.

12.     Defendant David Rausch is the Director of the Tennessee Bureau of Investigation (the "TBI"). He is sued in his official capacity and was at all points in time relative to this Complaint acting under color of state law. The TBI is a state agency with responsibility for enforcement and management of Tennessee's sex offender registration scheme. The TBI headquarters is located in Nashville, Davidson County, Tennessee.

13.     Defendant Maury County, Tennessee is a municipal government entity organized under the laws of the State of Tennessee and located in Maury County, Tennessee.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331.

15.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1).

## PLAINTIFF'S BACKGROUND

16.     Plaintiff is fifty-nine-year-old married man.

17.     Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to his out-of-state convictions that occurred prior to 2000.

18.     Specifically, Plaintiff was convicted of three separate offenses in California, which includes one (1) count of Lewd Acts with a Minor in 1991, two (2) counts of Annoying or Molesting a Child in 1992, and one (1) count of Lewd Acts with a Minor in 1999. It is Plaintiff's position that the two (2) counts of Lewd Acts with a Minor would be compared to a sexual battery conviction in Tennessee, a sexual offense, and Annoying or Molesting a Child would be compared to an indecent exposure conviction in Tennessee, which is only classified as a sexual offense upon a third or subsequent conviction. Nonetheless, as a result of his convictions, upon moving to Tennessee, Plaintiff was required to register in Tennessee under SORVTA for the rest of his life.

19.     After moving to Tennessee to be closer to family, Plaintiff immediately began applying for jobs. He began working at a household remodeling company for a brief period from July to September 2021. In October 2021, Plaintiff began working at a chrome plating business until he received a job opportunity with General Motors ("GM") in July 2022.

20.     While in Tennessee, Plaintiff met his now wife, whom he married in September 2023.

21.     In May 2024, Plaintiff and his wife bought a home and moved to Maury County, Tennessee to be closer to Plaintiff's work.

22.     However, after moving to Maury County, Tennessee, Plaintiff was informed by the Maury County Sheriff's Department that he could no longer work at GM, where he had been working for almost two (2) years, because it was located in an exclusion zone.

23.     Plaintiff has been on unpaid leave with GM since June 27, 2024, when he was told he could no longer work there. Plaintiff has applied to multiple other jobs with no success. At this time, Plaintiff risks losing his home as he is unable to pay his mortgage.

24.     Since his 1999 conviction, Plaintiff has held himself accountable and done his best to live a productive, law-abiding, and fulfilling life. However, his ability to do so has been significantly impeded by his status on the sex offender registry and the geographic restrictions imposed upon him.

## HISTORY OF THE TENNESSEE SEX OFFENDER REGISTRY

25.     The Tennessee General Assembly enacted this state's first sex offender registry law in 1994. 1994 Tenn. Pub. Laws, ch. 976.

26.     Known as "The Sexual Offender Registration and Monitoring Act" ("SORMA"), and implemented in January of 1995, SORMA was a confidential and private law enforcement database which acted as a centralized record system of sexual offender registration and verification information. It applied to people convicted of sex offenses on or after January 1, 1995 and retroactively to people whose convictions occurred before that date if they were still on probation or parole or incarcerated as of that date. 1994 Tenn. Pub. Laws, ch. 976, § 3.

27.     SORMA's original requirements were fairly limited. Persons required to register did so by completing and mailing monitoring forms to the TBI that requested basic information about the registrant including: name, date and place of birth, social security number, driver's license number, parole or probation officer's contact information, offenses of conviction, current place of employment, current address, and any other information deemed relevant.  SORMA did not require any in-person reporting or fee payments. 1994 Tenn. Pub. Laws, ch. 976, § 4.

28.     Any violation of SORMA was a Class A misdemeanor. 1994 Tenn. Pub. Laws, ch. 976, § 9.

29.     Under SORMA, any registrant could petition a court for relief from the Act's requirements ten years after release from probation, parole, or incarceration without supervision. 1994 Tenn. Pub. Laws, ch. 976, § 8.

30.     The Tennessee General Assembly amended SORMA numerous times in the years after its enactment, each time expanding its scope in ways that made it more public, more onerous, and more restrictive for registrants. For instance, beginning in 2000, registrants with multiple sex offense convictions were required to register for life, and a minimum 180-day jail sentence was mandated for certain violations of the registry requirements. 2000 Tenn. Pub. Acts, ch. 882, § 1; 2000 Tenn. Pub. Acts, ch. 997, § 1–2. Three years later, the legislature enacted the first restrictions prohibiting registrants from living or working within 1,000 feet of certain locations, and from living with minors under certain circumstances. 2003 Tenn. Pub. Acts, ch. 95, § 1.

31.     After multiple amendments, SORMA was eventually repealed and replaced with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 (the "SORVTA"), 2004 Tenn. Pub. Laws, ch. 921.

32.     The SORVTA comprehensively and dramatically changed the registry requirements, restrictions, and punitive impact in several respects, including:

    a.      turning aspects of the registry that had been private into a publicly available centralized record system;

    b.      imposing the first fee requirement upon registrants;

    c.      creating two classifications of registrants—"sexual offenders" and "violent sexual offenders"—based solely on the registrant's conviction offense, not on an individualized assessment of the registrant;

d.    expanding the lifetime registration requirement to all registrants classified as "violent sexual offenders;"

e.    enlarging the information registrants were required to provide to include the contact information of their nearest living relative, whether any minors live with them, their race and gender, and information about any cars, mobile homes, or boats they lived in;

f.    requiring registrants classified as "violent sexual offenders" to report to a designated law enforcement agency in person at least four times a year and others to report to a designated law enforcement agency in person once per year, and to update their fingerprints, palm prints, and mugshot at each visit;

g.    imposing a strict requirement to report any change in residence, employment, becoming a student, or release from incarceration within forty-eight hours; and

h.    enhancing the punishment for any violation of the registry to a Class E felony. 2004 Tenn. Pub. Laws, ch. 921, § 1.

33.    Since 2004, the Tennessee legislature has amended the SORVTA numerous times. Each amendment has applied retroactively and subjected registrants, including Plaintiff, to new, increasingly onerous obligations, restraints, disabilities, and punishments of a different character and a greater magnitude than before.

**THE SORVTA'S IMPACT ON PLAINTIFF**

34.    Plaintiff was informed that due to his California convictions, he was required by SORVTA to register as a "violent sexual offender" for the rest of his life. However, Plaintiff received a letter from the TBI dated October 7, 2024, which stated that the TBI's initial

determination to publicly classify Plaintiff as a "violent sexual offender" was incorrect and he would therefore be reclassified as a "sexual offender."

35. Additionally, the requirements and restrictions of the SORVTA have caused, and continue to cause, Plaintiff significant burdens and have substantially interfered, and continue to interfere substantially in his family life, residential and employment options, travel, mobility, and his overall enjoyment of life.

36. SORVTA's classifications operate both to stigmatize former offenders and as a means of designating additional burdens and restrictions for those former offenders assigned categories other than the standard "sexual" classification. These additional burdens and restrictions were incorrectly imposed upon Plaintiff until October 7, 2024, and may be again imposed upon him if the TBI changes their mind and classifies him as a "violent sexual offender" or an "offender against children" again.

37. Until October 7, 2024, Plaintiff was classified and labelled under the SORVTA as "violent against children," which is to say a "violent sexual offender" and an "offender against children." As such, Plaintiff was required report to a designated law enforcement agency in person during the months of March, June, September, and December for the rest of his life. However, pursuant to the letter dated October 7, 2024, Plaintiff is now classified as a "sexual offender" and required to report to a designated law enforcement agency in person during his birthday month, April.

38. Plaintiff was required to make an appointment and report to the Maury County Sheriff's Department for all in-person reporting, at least quarterly in March, June, September, and December. However, while Plaintiff is classified as a "sexual offender" this appointment is required to be made yearly, within the week before or after Plaintiff's April birthday.

39.     Plaintiff's. quarterly, now yearly, reporting can be onerous, particularly because law enforcement agencies typically designate a small number of officers, sometimes just one, to manage the registry. Local registrants must work around these officers' schedules in order to report. The SOR officers are not always available, and sometime leave the law enforcement office without notice to registrants for varying reasons, such as to proactively enforce SORVTA on other registrants. Consequently, it is not uncommon for registrants to take time off of work or other obligations to make the trip to the registering agency and pay for parking, only to have to turn around and make a new plan to report on another day because the SOR officer is not there to take their report.

40.     Thus far, the Maury County Sheriff's Department has honored Plaintiff's appointment times and treated him with respect. However, that was not Plaintiff's experience when registering with Metro Nashville Police Department ("MNPD"). While registering with MNPD, the registration process for Plaintiff was much longer and more cumbersome. Plaintiff was required to pay for parking down town before going inside and speaking through a glass window, for everyone in the vicinity to hear. Then if the registering officer was present and available, he would eventually facilitate the registration process. However, it was not uncommon for Plaintiff to pay for parking and talk to the person at the window only to discover that the registering officer was not available, so Plaintiff would be forced to leave and try again at another time.

41.     During quarterly, now yearly, reporting, Plaintiff's fingerprints, palm prints, and mugshot are updated, and Plaintiff must verify the now extensive information required by the TBI Registration Form ("TBI Form").

42.     Every three months, now yearly,, Plaintiff must disclose the following information on the TBI Form:

a. Name and any aliases;

b. Date and place of birth;

c. Social security number;

d. Copy of a valid driver license or government issued identification card;

e. Name, address, and phone number of his parole officer;

f. Offenses for which he was convicted and the corresponding date, county, and state of each conviction;

g. Name of current employer and the address, phone number, and length of current employment;

h. Address of residence and length of time at the residence;

i. Description, vehicle information numbers, and license tag numbers of vehicles used or owned by him;

j. Race and gender;

k. Name, address, and phone number of his closest living relative;

l. Number of victims and the age of the victims at the time of the offense;

m. Verification that the TBI has received his DNA sample;

n. Complete listing of his electronic mail address information, including usernames, social media accounts he uses or intends to use, instant message, other internet communication platforms or devices, and his username, screen name, or other method by which he accesses these accounts or websites;

o. Whether any minors reside in his primary or secondary residence;

p. Copies of all passports and immigration documents; and

q. Professional licensing information.

43.     The following information about Plaintiff is public, and is readily available online in a searchable database:

        a.     Plaintiff's name;

        b.     Plaintiff's date of birth;

        c.     Plaintiff's primary and secondary addresses;

        d.     Plaintiff's race and gender;

        e.     The date of last verification of information by Plaintiff;

        f.     Plaintiff's most recent photograph;

        g.     Plaintiff's driver license number and issuing state or government identification number;

        h.     Plaintiff's registering agency;

        i.     The text of the aggravated rape statute for which Plaintiff is required to register;

        j.     Plaintiff's physical description, including height, weight, eye and hair color, tattoos, scars, and marks;

        k.     Plaintiff's criminal history, including the date of all arrests and convictions and his registration status; and

        l.     Plaintiff's license plate number and a description of his vehicle.

44.     Plaintiff must report in person within forty-eight hours of a change in residence, establishing a physical presence at a particular location, or at the beginning of any new employment. Additionally, Plaintiff must report in person within forty-eight hours of any change in his employment status that is in effect for five or more consecutive days. Employment status changes include ending employment, a change in his employment location, changing shifts or

substantially changing hours of work, or any other change in Plaintiff's employment that differs from what Plaintiff originally reported.

45. Plaintiff must report in person within forty-eight hours any other changes to his TBI Form.

46. There are no good-faith exceptions to Plaintiff's reporting requirements. Thus, unavailability of the registering officer, illness, injury, transportation problems, or other emergencies will not exempt Plaintiff from his in-person reporting requirements or extend the strict time-frame.

47. Plaintiff must pay an annual registration fee, not to exceed $150.

48. Plaintiff must always have his driver's license or identification card—which conspicuously designates him as a sex offender—in his possession.

49. For violating any of these provisions, Plaintiff is subject to criminal prosecution for a Class E felony, punishable by a minimum fine of $350 and imprisonment for a minimum of 90 days for a first violation; a minimum fine of $600 and imprisonment for at least 180 days for a second violation; and a minimum fine of $1,100 and imprisonment for at least one year for any subsequent violations.

50. Plaintiff reasonably fears that, despite his best efforts to understand and comply with the law, and despite the absence of any intent to violate the law, he will eventually suffer criminal consequences for a violation of Tennessee's sex offender registry laws.

51. Due to the SORVTA, Plaintiff cannot live within one thousand feet of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public

("Prohibited Places"). The one-thousand-foot distance from Prohibited Places is known as an "Exclusion Zone."

52.    After moving to Tennessee to be closer to family, Plaintiff rented a home in Davidson County, Tennessee where he lived for approximately one year. While Plaintiff had limited funds after relocating to Tennessee, he did not move in with his mother and step-father in Wilson County, Tennessee due to his status on the registry and the hardships associated with having your name and address on the public registry.

53.    After renting for approximately one year, Plaintiff moved in with his now-wife. Plaintiff and his wife continued living in her home before they decided to move closer to Plaintiff's job at GM.

54.    With his job at GM, Plaintiff was able to afford to buy a home. However, the home search was a very stressful process. Plaintiff and his wife had a difficult time locating a home that was not in an exclusion zone, but was also in their budget and met their needs. After approximately five months, and the assistance of a real estate agent, Plaintiff spent more than he had planned, but he found a home that was not in an exclusion zone and would meet his family's needs.

55.    As his address is posted on the public registry, and his history of harassing and threatening messages, Plaintiff installed cameras on the outside of his home as a safety mechanism.

56.    Due to the SORVTA, Plaintiff also cannot work within one thousand feet of any Prohibited Places.

57.    Plaintiff's employment options are severely limited due to his age, criminal history, and public branding on Tennessee's public registry, formerly as a "violent sexual offender" and an "offender against children." To add insult to injury, Plaintiff's employment options are further restricted by not being able to work in an Exclusion Zone, by his employer's information being

published on the public registry, and by registering officers coming to the employment locations to question the employer.

58.     After moving to Tennessee, Plaintiff briefly worked for a household remodeling company. However, he was not allowed to go to the company's primary office because it was located in an exclusion zone. Additionally, Plaintiff was excluded from working a specific project at a school, despite the project being completed after hours with no children present.

59.     After a couple of months, Plaintiff left the household remodeling company and started working for a chrome plating business.  On one occasion, during Plaintiff's employment with the chrome plating business, he was approached by the secretary who informed him that an MNPD officer had been there to verify the status of his employment – a humiliating experience for Plaintiff.

60.     In July 2022, Plaintiff was offered a position at GM, which included a significant pay increase from his salary at the chrome plating business. As a result, Plaintiff accepted the job and began working at the plant in Spring Hill, Tennessee.

61.     Plaintiff started his employment with GM on the assembly line building cars. Shortly thereafter, he was promoted to team leader, and was in charge of six other employees on the line. Within another six months, Plaintiff was promoted to group leader, and was put in charge of fifty-five other employees.

62.     As a group leader, Plaintiff leads the door line team and is responsible for paperwork regarding payroll and attendance. He manages eight teams, organizing the manpower and moving people around to ensure the doors are being produced up to quality and efficiency.

63.     Plaintiff's performance at GM has been exemplary, as demonstrated by his two promotions and position as a group leader. However, after moving to Maury County, Tennessee,

Plaintiff's registering agent told him that he could no longer work at GM, after almost two years of working there, because it was allegedly located in an Exclusion Zone.

64.     Plaintiff's registering agent claims that GM is located within 1,000 feet of Spring Hill Middle School. While registering in Davidson County, this concern was never raised. However, if GM is located within 1,000 feet, there remains an active rail-road track, a busy roadway, and a body of water separating the middle school from GM.

65.     Plaintiff last worked at GM on June 27, 2024, after he was informed by his registering agent that he would be arrested and prosecuted for violating the SORVTA if he continued his employment.

66.     During the almost two years working at GM, in the same location he is now forbidden from working, Plaintiff had no problems. If Plaintiff would have known that moving to Maury County would mean losing his job, he never would have moved to Maury County.

67.     GM is trying to work with Plaintiff, and is currently hold his position for as long as possible, but Plaintiff is running out of time.

68.     Without his job at GM, Plaintiff has legitimate concerns that he will lose the home that he just purchased with his wife.

69.     With no current stream of income, Plaintiff has applied to multiple other jobs including Cracker Barrell for a third shift cleaning position and Amazon. However, Plaintiff has either been denied these positions or has not heard back at all. Additionally, with no other options, Plaintiff is contemplating temporarily transferring his position at GM to Michigan or Kentucky, so he does not lose his home and he can continue supporting his family. However, in doing so, Plaintiff will be away from everything and everyone that he knows.

70.     After Plaintiff was forced to be placed on unpaid leave at GM, a union leader, Craig Callaway, posted Plaintiff's registry page on the Union's Facebook page. While Plaintiff does not have a Facebook, a number of coworkers reached out to him after seeing the post, which has spread through the ranks at GM. The registry page branded Plaintiff as not only a sexual offender, but "VIOLENT AGAINST CHILDREN," as that is what the TBI had branded Plaintiff at that time, despite the TBI's recent reclassification of Plaintiff as a "sexual offender."

71.     Plaintiff has a strong support system in Tennessee, including his wife, mother, step-father, sister, and brother-in-law. Plaintiff's sister and brother-in-law also have children, but Plaintiff's interaction with them is severely limited due to his status on the registry. Additionally, the SORVTA prevents Plaintiff to attend the majority of their events, as they typically take place in exclusion zones. As a result, Plaintiff is not invited to these events, as his family knows he cannot attend. However, if Plaintiff was not subject to SORVTA, he would attend these family events.

72.     Plaintiff married his wife on September 30, 2023. Since that time, Plaintiff's wife has also experienced, first-hand, the stress, ridicule, and restrictions imposed by the SORVTA. Plaintiff's wife did not take Plaintiff's last name when they married due to the registry and the stigma associated with it. Plaintiff's wife experiences the daily stressors of the registry with him and as a result, she has started waking up in the middle of the night and checking outside, out of fear that someone is lurking on their property.

73.     Plaintiff's wife enjoys camping and kayaking, and spending time outdoors, but she knows she cannot do these things with Plaintiff. Despite the registry only preventing registrants from being upon or remaining upon any Prohibited Places when there is reason to believe minors are present, in practice, law enforcement officials will press charges and prosecute whether there

are any minors present or not. As a result, Plaintiff is essentially forbidden from camping or kayaking with his wife.

## **TBI'S ROLE IN MAINTAINING AND ENFORCING SORVTA**

74.     The TBI is the ring leader of the registry scheme, responsible for maintaining a centralized registry database in which all of the information reported about each registrant is maintained until verification of a registrant's death.

75.     As of June 30, 2005, there were 3,254 registrants listed on the public registry in Tennessee. However, that number has grown year over year with 10,339 registrants as of June 30, 2007, 21,069 registrants as of July 2015, and 25,580 registrants as of July 30, 2021.

76.     The public registry includes registrants that are "incapacitated," "deceased," "deported," and living in other states.

77.     The TBI maintains copies of each and every reporting form that has been turned in for each and every registrant.

78.     The TBI provides online access to Tennessee's local law enforcement agencies to enable them to transmit the information they collect about registrants to the registry.

79.     Relying upon the information in its central repository, the TBI classifies registrants into SORVTA's "sexual," "sexual against children," "violent," and "violent against children" classification categories.

80.     A registrant is not afforded any notice or any opportunity to be heard before or during the TBI's classification process.[1]

---

[1] *See State v. Allen*, 593 S.W.3d 145, 154-55 (Tenn. 2020) (The Tennessee Supreme Court noted that the SORVTA does not expressly prescribe any approaches or processes for the TBI to determine a registrant's classification. Furthermore, the TBI does not provide "notice or any opportunity to be heard before or during the initial classification determination.")

81.     There is no process by which a registrant can appeal a TBI classification determination. However, the TBI retains the option of changing a classification category if the TBI determines that its original classification was unfounded. In many instances over the years, the TBI has originally classified registrants as "sexual" only to subsequently reclassify them as "violent" or one of the "against children" categories, resulting in the registrant discovering after several years of compliance that he can never be removed from the registry.

82.     When Plaintiff was initially classified as "violent against children," he had no opportunity to be heard or mechanism to challenge the determination. However, according to the TBI, Plaintiff was incorrectly branded as "violent against children" for years before his classification was changed to "sexual" on or around October 7, 2024.

83.     Plaintiff understands that while the TBI stated that he could request removal from the registry in the future, at that time, the TBI could once again reclassify him based on the same information used to reclassify him as a "sexual offender." Additionally, despite the TBI's October 7, 2024 letter, he understands that any removal request will be denied as a result of his multiple convictions, as the TBI retroactively requires registrants with one or more prior conviction to register for life.

84.     Unfortunately, the TBI routinely provides false hope to registrants, leading them to believe that there will be an opportunity for removal in the future, only for that opportunity to be crushed upon another reclassification or the future removal request.

85.     All registrants requesting removal from the registry are required to do so in writing to the TBI, who then unilaterally decides whether that request should be granted. The TBI may deny that removal request for a number of reasons, including their unilateral determination

regarding the registrant's classification and whether the registrant has "substantially complied" with the registry, a term which is not defined by SORVTA.

86.     The TBI disseminates its classification determinations to Tennessee's local law enforcement and relevant state agencies, and directs them to treat registrants in accordance with their classification status.

87.     The TBI also maintains the "Tennessee Sex Offender Registry" website.

88.     The website publicly publishes extensive information about each registrant, as outlined in ¶ 41.

89.     The TBI facilitates email notifications for the general public to subscribe which provides registrant information, including report dates, for specific registrants and/or registrants associated with a specific zip code.

90.     For former registrants who have moved away from Tennessee after having been registered and who no longer have sufficient ties in the form of residence, employment, or education to merit registration, the TBI nonetheless keeps their information in the public registry website with the "status" label of "inactive." There is no provision in SORVTA that authorizes the TBI to continue publishing information regarding former registrants who no longer meet SORVTA's statutory criteria for registration.

91.     SORVTA specifically lists the TBI as one of the agencies charged with enforcing it and for many registrants the TBI is considered the registering agency.

92.     SORVTA specifically directs the TBI to inform local law enforcement agencies any time that the TBI has information establishing a factual basis to believe that a former offender has not complied with SORVTA.

93. The TBI disseminates registrants' registration status to the Federal Bureau of Investigation's National Crime Information Center ("NCIC"). In turn, NCIC then includes a remark on the registrant's NCIC report reflecting that the registrant is a "Registered Sex Offender" in "Tennessee."

94. The TBI conducts state and federal criminal record checks on all registrants to determine whether they have committed any other offenses. If the TBI determines that the offender has committed an offense, the TBI refers this information to local law enforcement so that the registrant can be prosecuted.

95. The TBI routinely works directly with local, state, and federal law enforcement agencies to proactively enforce SORVTA.

96. The TBI assists District Attorneys and local law enforcement with locating and prosecuting registrants, routinely providing lists of registrants which it deems as being non-compliant. Additionally, the TBI provides law enforcement with registrants' files to aid in their prosecution. During the fiscal year 2021-2022, the TBI "provided law enforcement with approximately 231 certified copies of files for the purpose of prosecution."

97. The TBI routinely partners with federal, state, and local law enforcement agencies to conduct "compliance check" operations on registered offenders in a given community. The TBI then broadcasts these efforts to the media.

98. The TBI's 2021-2022 annual report indicates that the TBI has a "Sex Offender Registry" section that includes six intelligence analysts and one temporary employee. The report indicates that the TBI's Sex Offender Registry unit fulfills the following functions:

> The TBI SOR unit serves and assists Tennessee law enforcement agencies including sheriff's offices, police departments, the Tennessee Department of Correction, as well as out-of-state agencies. The TBI SOR unit not only oversees the state sex offender database, but provides training and support to registering

agencies, ensures accuracy of sex offender classifications and registrations, manages federal grant projects, issues SOR notifications to the public and law enforcement, conducts file audits, removes deceased offenders from the registry, and reviews sex offender terminations.

99.     The TBI's annual reports indicate that the TBI has trained hundreds of local law enforcement officers on SORVTA, and that one of the TBI's training programs – which as of the TBI's 2021 report, has been completed by over two hundred law enforcement officers – is about "SOR Compliance Operations."

100.    The 2021-2022 TBI annual report goes on to state that "TBI analysts assist with SOR compliance operations across the state." The report then states:

> TBI compliance checks are joint operations with multiple law enforcement agencies including TBI, registering agencies, and the U.S. Marshals Service. TBI analysts create intelligence packets on each registered offender for the operations which contains a copy of the most recent SOR registration form, criminal record/warrant check, and DL information. During the compliance checks, law enforcement will make contact with each registered sex offender and verify their offender information, including residence, vehicles, employment, and compliance with any offender restrictions (i.e., children present, computers/internet, and firearms) when applicable. If a registered offender is found in violation of SOR rules, warrants are obtained by the registering agency.

101.    In the 2021-2022 TBI annual report, the TBI boasted the fact that, "During this fiscal year, four local agencies completed compliance operations that resulted in law enforcement making contact with 145 offenders to verify compliance and 14 arrest[s]."

102.    The 2021-2022 TBI annual report also stated that one of the TBI's analysts oversees the TBI's "absconder project," which "provide[s] strategic planning and operational oversight for state and local law enforcement efforts to locate, arrest, and reduce the population of 672 at-large-non-compliant sex offenders classified as absconders on the Tennessee Sex Offender Registry." The 2021 – 2022 report proudly declared that in that year, the absconder project had led to the arrests of four "non-compliant sex offenders."

103.     The TBI's registry website contains a section on the home page labeled "Help Us Find These Wanted Violators." Below the heading, the site says, "The TBI seeks information about the sex offenders listed below, who are in violation of the state's Sex Offender Registry laws." This is followed by a row of former offender profiles with names, pictures, qualifying sex offenses, and last known whereabouts.

104.     The TBI routinely utilizes its social media platforms to advance and celebrate its SORVTA enforcement goals.

105.     Some of the TBI's social media posts focus on notifying the public of individual wanted SORVTA violators, providing the name and picture of the alleged violator as well as the name and phone number for the relevant local law enforcement agency. These posts invite the public to call in information about the alleged violator should someone see him.

106.     Other posts celebrate the TBI's role in conducting joint SORVTA compliance operations with local, state, and federal law enforcement agencies. For instance, on August 22, 2024, the TBI posted a social media post proudly proclaiming the TBI's recent efforts to conduct an "offender compliance operation" with the Giles County Sheriff's Office and the Pulaski Police Department. The post indicated that the compliance operations had resulted in three arrests for SORVTA violations, one of which was for a "living restriction" violation. The post stated that it was the seventh such joint compliance operation that the TBI had collaborated with law enforcement agencies on in the year 2024.

107.     Similarly, in a October 13, 2022 Facebook post, the TBI boasted about "Operation Clean Slate," a joint sex offender registry compliance check in Maury County, which included the "Maury County Sheriff's Department, Columbia Police Department, Tennessee, Spring Hill Police Department, and Mount Pleasant Police Department" and the assistance of "[i]ntelligence analysts

and special agents with the Tennessee Bureau of Investigation." "Contact was made with 77 registered sex offenders, and 73 of them were found to be compliant. Four offenders were arrested for various offenses, including violations of address changes or living restrictions and illegal possession of weapons."

108.    The TBI publishes "Standard Operating Procedures" which purport to give mandatory directives to local law enforcement in the enforcement of SORVTA.

109.    TBI's analysts and attorneys also counsel local law enforcement agencies in defining the scope of the enforcement rules, providing interpretations of SORVTA, and advising as to what does or does not constitute a violation.

## MAURY COUNTY SHERIFF'S OFFICE POLICY AND PRACTICE OF ENFORCING SORVTA

110.    Local law enforcement agencies play a significant role in enforcing SORVTA, both in terms of the collection of information, the reporting of that information to the TBI, and the enforcement of SORVTA's restrictions and obligations.

111.    Upon information and belief, in the present policy environment all law enforcement agencies in Tennessee take their lead on which registrants to treat as subject to SORVTA enforcement from the TBI and NCIC.

112.    If the TBI lists a registrant on the registry, local law enforcement agencies will treat the registrant as subject to SORVTA and will enforce SORVTA's various restrictions on the registrant accordingly.

113.    If the TBI shows a registrant as not subject to registration, local law enforcement agencies will not enforce SORBTA's restrictions on the registrant.

114.    The Maury County Sheriff's Office assigns deputies to track local sex offenders and proactively enforce SORVTA.

115.    On information and belief, in the years since Tennessee enacted the SORVTA, Maury County Sheriff's Office's policy has been to indiscriminately enforce Tennessee's SORVTA laws against all persons deemed under Tennessee law to be "sexual offenders" and "violent sexual offenders," without excepting those persons whose offenses predated the passage of SORVTA.

116.    While Tennessee law does require local law enforcement agencies, such as Maury County Sheriff's Office, to participate in the registration of sex offenders, Tennessee law does not require local law enforcement agencies to take additional proactive measures to enforce SORVTA. Maury County does this on their own accord and with the assistance of the TBI.

117.    Tennessee law never requires law enforcement officers to arrest or file criminal charges against alleged SORVTA violators.

118.    A deputy with the Maury County Sheriff's Office threatened to arrest Plaintiff if he continued his employment at GM, where he had been working for almost two years without any issues.

## CLAIMS FOR RELIEF

### COUNT I: *EX POST FACTO* VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION (42 U.S.C. § 1983)

119.    Plaintiff hereby reincorporates paragraphs 1-118 by reference.

120.    As applied to Plaintiff, Tennessee's registry regime, in whole or in part, constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution, and is thus unconstitutional.

121.    Defendant Rausch is a proper official capacity defendant because, as the Director of the TBI, he plays a significant role in enforcing and maintaining Tennessee's registry scheme.

122. Defendant Maury County, Tennessee has a policy and practice of consciously choosing to enforce Tennessee's registry scheme through proactive enforcement measures, including having its deputies show up at registered offender's residences without warning to inspect the premises and verify their address.

123. Maury County, Tennessee's policy does not except from these proactive enforcement actions those offenders whose qualifying sex offenses predate Tennessee's enactment of the SORVTA.

124. While Tennessee law does require Maury County, Tennessee to participate in the registration aspect of the SORVTA, it does not require Maury County, Tennessee to engage in the proactive enforcement of it.

125. Plaintiff is entitled to declaratory and injunctive relief prohibiting the Defendants from continuing to enforce Tennessee's registry scheme, in whole or in part, against him in violation of his constitutional right against *ex post facto* punishment.

## COUNT II: *DUE PROCESS*
## (42 U.S.C. § 1983)

126. Plaintiff hereby reincorporates paragraphs 1-118 by reference.

127. Much, if not all, of SORVTA constitutes an unconstitutional violation of Plaintiff's constitutional ex post facto rights.

128. These provisions of SORVTA that are ex post facto as applied to Plaintiff are void as a matter of law.

129. Although numerous federal courts have held that much of SORVTA constitutes "punishment" within the meaning of the ex post facto clause, the federal courts have not yet conclusively determined which provisions are "punitive" and which might be considered "regulatory." Consequently, as of the filing of this complaint it is not reasonably possible for

anyone, much less Plaintiff, the TBI, or the local law enforcement agencies that assist the TBI in enforcing SORVTA to determine which parts of SORVTA do or do not apply to Plaintiff.

130.    Because it is not reasonably possible for Plaintiff or for law enforcement to ascertain which sections of SORVTA apply to Plaintiff, application of any of SORVTA's registration obligations to Plaintiff will result in Plaintiff being subjected to unconstitutionally vague SORVTA enforcement provisions, wherein Plaintiff does not know what he can or cannot do without being arrested and law enforcement does not know what it can or cannot arrest Plaintiff for.

## COUNT III: *CIVIL CONSPIRACY*
### (42 U.S.C. § 1983)

131.    Plaintiff hereby reincorporates paragraphs 1-118 by reference.

132.    As applied to Plaintiff, each of the SORVTA enactments that was passed or possibly extended after Plaintiff's qualifying offense constitutes "punishment" within the meaning of the ex post facto clause of Article I, § 10 of the U.S. Constitution, and is thus unconstitutional. Moreover, because it is not reasonably possible at this time to discern which parts of SORVA can be enforced on Plaintiff without violating his *ex post facto* rights, application of any of SORVA to Plaintiff violates his right to federal Due Process.

133.    Director Rausch and the TBI cooperate extensively with Tennessee's local law enforcement agencies, as well as other state and federal agencies, to proactively enforce SORVTA and its attendant restrictions and obligations.

134.    Director Rausch and the TBI provide training, logistical support, planning, and special agents to assist local law enforcement agencies to identify, locate, and arrest alleged SORVTA violators.

135.     SORVTA's codified enactments provide a common plan that Director Rausch and the TBI rely on to cooperate with other local, state, and federal law enforcement agencies.

136.     The Director, the TBI, and their law enforcement agency cohorts all share in the common objective of enforcing SORVTA on former offenders whose qualifying offenses predated much or all of SORVTA, despite the Director and his cohorts' knowledge that their actions will result in violations of these registrants' constitutional rights.

137.     The Director, the TBI, and their law enforcement agency cohorts all take a wide variety of overt acts in furtherance of this conspiracy to violate the constitutional rights of registrants whose qualifying sex offenses predate SORVTA.

138.     The Tennessee law enforcement conspiracy to enforce SORVTA on former offenders whose qualifying offenses predate SORVTA has resulted in severe injuries to registrants, including Plaintiff as articulated herein.

139.     Plaintiff is entitled to injunctive relief to protect his constitutional rights from further infringement by Defendant Rausch, the TBI, and their co-conspirators.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1.     That proper summons issue and the Defendants be required to Answer this Complaint within the time provided by law.

2.     That the Court grant a preliminary injunction enjoining Defendants from enforcing the *ex post facto* elements of Tennessee's SORVTA regime against Plaintiff solely on the basis of his pre-2000 California convictions.

3.     That judgment for Plaintiff enter against the Defendants, declaring the retroactive application of SORVTA, in whole or in part, violates the *Ex Post Facto* Clause of the United States

Constitution, and issue a permanent injunction removing Plaintiff from the registry or otherwise restrain Defendants from retroactively enforcing the *ex post facto* elements of SORVTA against Plaintiff.

4.      That this Honorable Court permanently enjoin Defendants from enforcing Tennessee's SORVTA restrictions against Plaintiff on the basis of his pre-2000 California convictions.

5.      That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

6.      That the court costs in this matter be taxed to the Defendants.

7.      That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Dated: November 19, 2024.

Respectfully submitted,

RYAN C. DAVIS LAW, PLLC

    /s/ Ryan C. Davis
RYAN C. DAVIS (BPR #34588)
KENNEDY KRIEG (BPR #41179)
*Attorneys for Plaintiff*
1224 2nd Ave South, Suite 102
Nashville, TN 37210
(615) 649-0110
ryan@ryancdavislaw.com
kennedy@ryancdavislaw.com